## HOUSTON v. BLAKE.

Where property (a wagon and sleigh), advertised to be sold on execution, was delivered by a receiptor at his own house, and the sale being adjourned, was left by the side of the road, and partly in the traveled path, without any one being placed in charge of it by the sheriff;—*Held*, that the attachment was not thereby abandoned, and that the defendant knowing the purpose of the officer to sell the property was liable to him in trespass for taking it away.

THIS is an action of trespass for one gig wagon and one single sleigh, and on trial upon the general issue it appeared that the property had been attached by the plaintiff, a deputy sheriff, on mesne process, in a suit Jacob M. Cook against this defendant, and receipted for by one Thomas Shute; that an execution on the judgment in that suit for Cook, was committed to the plaintiff, who levied the same upon this and other property, attached at the same time, and advertised it for sale December 30, 1858, at Shute's house, and the property was at the time and place of sale delivered by Shute to the plaintiff; the wagon and sleigh being then by the side of the highway, in front of Shute's house, and the wagon, as the jury found, being partially in the traveled part of the road.

Immediately upon the delivery, the plaintiff proclaimed an ad-

journment of the sale to the eighth day of the following January, and left the wagon and sleigh on the same spot, but without putting any one in charge of them, and on the same day posted notices of said adjournment.

It appeared that the defendant was present, knew of the delivery and adjournment, and, as the jury found, understood that the plaintiff intended to sell the wagon and sleigh on the eighth of January, but before that day took away the articles and sold them. Upon these facts the court directed a verdict for the plaintiff for the value of the property, there being no question that all was needed to satisfy the execution; and they were also instructed to return answers to questions in writing, which answers are incorporated into this case.

The direction to return a verdict for the plaintiff was, by agreement of parties, subject to the opinion of the whole court; judgment to be upon the verdict, or the verdict set aside, and a general judgment for the defendant, as the opinion of the Court might be.

*Burrows & Ela*, for the defendant.

The question whether there was an abandonment or loss of the plaintiff's lien, was a question for the jury. The court should have instructed the jury that if the property, at the time of the taking by the defendant, was in the actual or constructive possession or custody of the plaintiff or his agent, their verdict should be for the plaintiff; otherwise the plaintiff could not maintain an action of trespass for the property, and their verdict should be for the defendant. But if it is a question for the court, the officer can not maintain his action; for, in order to maintain his lien, he must first obtain and then retain possession of the property; he must keep it in his own custody, or the custody of a servant, and have it under his absolute control. *Dunklee* v. *Fales*, 5 N. H. 528; *Nichols* v. *Potter*, 6 Shep. 231; *Spaulding* v. *Adams*, 32 N. H. 211; *Bayley* v. *White*, 4 Pick. 395. In the case at bar, the plaintiff left the property for a week in the highway, the wagon in the traveled part of it; it was absolutely necessary for their preservation that they should be taken away; and the defendant, in whose possession they had hitherto remained, was certainly the proper person to remove them. The property passed wholly out of the possession and control of the officer; he put no keeper over it, but leaving it in this situation, adjourned the sale a week. The sale by the defendant afterward can not revive the officer's lien. The intention of the officer can not alter the effect of his abandonment. The levy of the execution was merely a keeping up of the lien by attachment, no title being obtained or divested from the debtor until after the sale. *Churchill* v. *Warren*, 2 N. H. 288; *Folsom* v. *Chesley*, 2 N. H. 432–434; *Blake* v. *Shaw*, 7 Mass. 506. Negligence, as well as voluntary abandonment, will defeat the lien of the officer. *Deming* v. *Warren*, 16 Mass. 421. If the lien of the officer is lost, he can not maintain an action of trespass.

*Clark*, for the plaintiff.

Bellows, J.   As between the sheriff and the defendant, the special property acquired by the seizure of the goods still subsisted, and although the sheriff did not remain with them, nor place them in the custody of another, yet as to the debtor he is to be deemed to have retained the possession of them.   They were taken out of the defendant's possession, delivered by the receiptor in front of his house to the plaintiff, that being the place of sale, and the sale thereupon publicly adjourned, in the presence and hearing of the defendant, to a future day; and the defendant knew of the delivery to the plaintiff, and understood that he intended to sell the property in question on the day to which the sale was so adjourned.

At that time then the goods were out of the defendant's possession and in that of the plaintiff, and clearly under his control, and the only question is, whether his lien was afterward lost by leaving the goods there, without any keeper.   Had they so been left in the defendant's possession, it may be conceded that they would have been liable to attachment by another officer, provided he had no notice of the prior attachment, and that it was still subsisting.   But with such notice it has been held, in the case of property receipted, that a second officer could not make a valid attachment as against the first; *Young* v. *Walker*, 12 N. H. 502; and it is also held that the language of *Dunklee* v. *Fales*, 5 N. H. 528, upon this point, is somewhat too broad.   Upon the principle laid down in *Young* v. *Walker*, and from which we see no occasion to dissent, the attachment or levy would not have been necessarily dissolved as to the defendant, had he been the owner of the land upon which the goods were left. The doctrine of *Young* v. *Walker* is also maintained by Parker, C. J., in *Whitney* v. *Farwell*, 10 N. H. 9, where the goods were allowed by the receiptor to go back into the possession of the debtor, and it was held that the attachment was so far dissolved that another officer, without notice of a subsisting attachment, might seize and hold the goods.   But it was distinctly held that the first attachment was still in force for the security of the first attaching officer, till the second was made, and he might again seize the property by virtue of the first attachment.   And in accordance with this doctrine are the cases of *Train* v. *Wellington*, 12 Mass. 497, and *Baldwin* v. *Jackson*, 12 Mass. 131.

Indeed the principle which requires that the officer should take and retain the custody of goods attached, in order to acquire a valid lien as against a subsequent attaching officer, appears to be based upon the idea that such retention and use by the debtor is evidence of fraud.   5 Dane's Abr., ch. 136, a 16, sec. 28, and cases cited in *Edwards* v. *Harben*, 2 D. & E. 596, and *Bradley* v. *Wyndham*, 1 Wils. 44.

In the case before us, of course, no such question could arise, and as to the defendant the lien must be regarded as subsisting.

It is true that no license appears to have been given by Shute that the goods might remain on his land, nor did he agree to take charge of them.   But this is a matter between the plaintiff and Shute, and does not, as we can see, concern either this defendant or other attaching creditors.   It is enough for them that it is taken from the debtor's possession, and kept in a place of deposit selected

by the sheriff, and it is not, as we conceive, for others to inquire into the validity of the arrangement between the plaintiff and Shute.

Had the goods been originally stored by the defendant with Shute, and so not removed, a different question might have been presented.    Where corn was attached and removed by the officer to the corn barn of a third person, by his permission, who declined to take any custody or responsibility in regard to it, it was held that it must be regarded as in the custody of the sheriff.    *Marshall* v. *Town,* 28 Vt. 14.    So in *Fletcher* v. *Cole,* 26 Vt. 170, an attachment of lumber in a mill-yard of a third person, and a removal of it three or four rods in the same mill-yard was held good. So an attachment of hewn stones, not removed at all, but receipted by the creditor, whose place of business was within fifty or sixty rods, was held good against a subsequent attachment.    So where a buggy wagon was attached and placed by the officer in an open shed, and afterward removed by some person without the officer's consent, into the highway, where it was attached by another officer, it was held upon an agreed statement of facts, that there was no voluntary abandonment of the attachment, and that the possession was constructively in the first attaching officer, whose attachment then subsisted.    *Butterfield* v. *Clemence,* 10 Cush. 269.

It is true, in this case, that the place of deposit might not have been well chosen, and under some circumstances an action on the case for negligence might have been sustained.    But it would not on that account be an abandonment of the attachment.    There must be, therefore,

*Judgment on the verdict.*